UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-61434-MARTINEZ/VALLE

PSEUDO FORCE STUDIO LLC,

     Plaintiff,

v.

SALTY SAVAGE LLC,

     Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Entry of Final Default Judgment against Defendant Salty Savage LLC (ECF No. 12) (the "Motion"). The Motion was referred to the undersigned for a Report and Recommendation. (ECF No. 13). Upon review of the Motion, supporting declarations, and the record in this matter, the undersigned respectfully recommends that Plaintiff's Motion be **GRANTED**.

## I.     BACKGROUND

### A.  Plaintiff's Claims

Plaintiff owns all rights in and to the Pseudo Force Studio Marks[1] as defined in the Complaint (ECF No. 1), which are valid and registered on the Supplemental Register of the United States Patent and Trademark Office. (ECF No. 12-1) (Ruby Decl. ¶ 4). In the Motion, Plaintiff seeks, among other things: (i) to permanently enjoin Defendant Salty Savage LLC ("Defendant") from continuing to infringe any of Pseudo Force Studio's intellectual property rights, including the Pseudo Force Studio Marks; (ii) an award of statutory damages against Defendant in the

---

[1] Capitalized terms not defined herein are defined in the Complaint or Motion.

amount of \$1,000,000[2] for use of a counterfeit mark; and (iii) a judgment on all counts, including trademark infringement (15 U.S.C. § 1114) (Count 1), false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count 2), common law unfair competition (Count 3), and common law trademark infringement (Count 4). *See generally* (ECF No. 12).

### B. Procedural Background

On July 16, 2025, Plaintiff filed its Complaint against Defendant. *See generally* (ECF No. 1). According to the Declaration of Service, on July 24, 2025, Plaintiff served Defendant with the Summons and Complaint through John Jones, co-resident of the Registered Agent Kassy Rheann Mecca, at 701 SW 7th Street, Dania Beach, Florida 33004. (ECF No. 6). On September 11, 2025, the Clerk entered a Default against Defendant for failure to appear, answer, or otherwise respond to the Complaint. (ECF No. 8). Pursuant to the Clerk's Entry of Default, the District Judge entered the Order on Final Default Judgment Procedure directing Defendant to respond to the Complaint or a default final judgment may be entered against it. (ECF No. 9). Plaintiff subsequently filed a Notice Regarding Extension of Time for Defendant to Appear, in which the parties agreed to an extension of time through October 10, 2025 for Defendant to respond to the Complaint. (ECF No. 11). To date, Defendant has failed to answer or otherwise respond to the Complaint. The instant Motion followed.

The time for Defendant to respond to the Complaint has expired and Defendant has failed to appear or otherwise respond to the Complaint. To Plaintiff's knowledge, Defendant is not an infant or incompetent person, and the Servicemembers Civil Relief Act does not apply. (ECF No. 12-2) (Kaminetzky Decl. ¶ 8).

---

[2] Although the Complaint alleged \$2,000,000 in statutory damages, the Motion requests \$1,000,000. *Compare* (ECF No. 1 at 19)*, with* (ECF No. 12 at 12).

## II.    <u>LEGAL STANDARD</u>

A party may apply to the Court for a default judgment when the defendant fails to timely respond to a pleading. Fed. R. Civ. P. 55(b)(2). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotations omitted) (quoting *Nishimatsu. Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[3]  However, conclusions of law are to be determined by the court. *Mierzwicki v. CAB Asset Mngmt. LLC*, No. 14-CV-61998, 2014 WL 12488533, at *1 (S.D. Fla. Dec. 30, 2014) (citation omitted). Therefore, a court may only enter a default judgment if there is a "sufficient basis to state a claim." *Id.*

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted).  Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when . . . additional evidence would be truly unnecessary to a fully informed determination of damages." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017).  Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not required.  *See SEC v. Smyth,* 420 F. 3d 1225, 1232 n.13 (11th Cir. 2005); *see also PetMed Express*, 336 F. Supp. 2d at 1217 (finding evidentiary hearing unnecessary because plaintiff was seeking statutory damages under the Lanham Act); *Luxottica Group S.p.A. v. Casa Los Martinez Corp.*, No. 14-CV-22859, 2014 WL 4948632, at *2 (S.D. Fla. Oct. 2, 2014) (same).

---

[3] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

## III.    <u>DISCUSSION</u>

### A.    **Plaintiff Has Sufficiently Plead its Claims**

The Complaint asserts four claims against Defendant: (i) trademark counterfeiting and infringement under § 32 of the Lanham Act, in violation of 15 U.S.C. § 1114 (Count 1); (ii) false designation of origin under § 43(a) of the Lanham Act, in violation of 15 U.S.C. § 1125(a) (Count 2); (iii) unfair competition under Florida common law (Count 3); and (iv) trademark infringement under Florida common law (Count 4). *See* (ECF No. 1 ¶¶ 73-106).

*1.    Trademark Counterfeiting and Infringement Under the Lanham Act (Count 1)*

Under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" that "is likely to cause confusion, or to cause mistake, or to deceive." *PetMed Express*, 336 F. Supp. 2d at 1217-18 (citations omitted). Thus, to prevail on a trademark infringement claim, a plaintiff must demonstrate that: (i) its mark has priority; (ii) defendant used its mark in commerce; and (iii) defendant's mark is likely to cause consumer confusion.[4] *Id*.

As to Count 1, Plaintiff incorporates the preceding paragraphs in the Complaint and further alleges that:

> 74. This is an action for trademark counterfeiting and infringement against Defendant based on their use of counterfeit and confusingly similar imitations of the Pseudo Force Studio Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

> 75. Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the Pseudo Force Studio Marks.

---

[4] Relatedly, the analysis of liability for Florida common law trademark infringement (as in Count 4) is the same as under the Lanham Act. *PetMed Express*, 336 F. Supp. 2d at 1217-18 (citing *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003)).

76. Defendant is continuously infringing and inducing others to infringe the Pseudo Force Studio Marks by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

77. Defendant's concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Counterfeit Goods.

78. Defendant's unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendant with profits at Plaintiff's expense.

79. Defendant's above-described illegal actions constitute counterfeiting and infringement of the Pseudo Force Studio Marks in violation of Plaintiff's licensed rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

80. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendant's above-described activities if Defendant is not preliminarily and permanently enjoined.

81. If not preliminarily and permanently enjoined, Defendant will continue to wrongfully profit from their illegal activities.

(ECF No. 1 ¶¶ 74-81); *see also Id.* ¶¶ 101-06 (alleging common law trademark infringement in Count 4).

Based on these allegations, which are admitted upon Defendant's default, Plaintiff has satisfied the elements to establish a claim for federal trademark infringement as alleged in Count 1.

   2.   *False Designation of Origin Pursuant to § 43(a) of the Lanham Act (Count 2)*

Section 43(a) of the Lanham Act makes it unlawful for "[a]ny person . . . in commercial advertising or promotion, [to] misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).  To state a claim under § 43 of the Lanham Act, a plaintiff must show that: (i) the defendant's statements were false or misleading; (ii) the statements deceived, or had the capacity to deceive, consumers; (iii) the deception had a material effect on the consumers' purchasing

decision; (iv) the misrepresented service affected interstate commerce; and (v) it has been, or likely will be, injured as a result of the false or misleading statement. *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

As to Count 2, Plaintiff alleges that:

83. Upon information and belief, Defendant sold or offered for sale Counterfeit Goods bearing or using copies of the Pseudo Force Studio Marks which have been widely advertised and offered for sale throughout the Website.

84. Defendant's Counterfeit Goods bearing or using copies of the Pseudo Force Studio Marks are virtually identical in appearance to Plaintiff's genuine goods.

85. Defendant's Counterfeit Goods are different in quality from Plaintiff's goods and are of much lower quality.

86. Defendant's activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

87. Defendant, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

88. Defendant has authorized infringing uses of the Pseudo Force Studio Marks in Defendant's advertisement and promotion of their counterfeit and infringing branded goods.

89. Defendant has misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

90. Defendant is using counterfeits and infringements of the Pseudo Force Studio Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

91. Defendant's above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

92. Plaintiff has no adequate remedy at law, and has sustained indivisible injury and damage caused by Defendant's concurrent conduct.

93. Absent an entry of an injunction by this Court, Defendant will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages

(ECF No. 1 ¶¶ 82-93).

Based on these allegations, which are admitted upon Defendant's default, Plaintiff has satisfied the elements to establish a claim for false designation of origin under the Lanham Act as alleged in Count 2.

3.      *Florida Common Law Unfair Competition (Count 3)*

Under Florida common law, the determining factor in the analysis of unfair competition is whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products.  *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-CV-8381, 1986 WL 15668, at *4 (S.D. Fla. Dec. 9, 1986) ("[I]t is clear that the Court need not find 'actual confusion' . . . . The proper test is 'likelihood of confusion[.]'").

As to Count 3, Plaintiff alleges that:

95. This is an action against Defendant based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks that are virtually identical to the Pseudo Force Studio Marks in violation of Florida's common law of unfair competition.

96. Defendant's activities complained of herein constitute unfair methods of competition.

97. Specifically, Defendant is promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of the Pseudo Force Studio Marks.

98. Defendant is also using counterfeits and infringements of the Pseudo Force Studio Marks to unfairly compete with Plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

99. Defendant's infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's products sold therein by their use of the Pseudo Force Studio Marks.

100. Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendant's actions.

(ECF No. 1 ¶¶ 94-100).

Based on these allegations, which are admitted upon Defendant's default, Plaintiff has satisfied the elements to establish a claim for unfair competition under Florida common law as alleged in Count 3.

### 4. *Florida Common Law Trademark Infringement (Count 4)*

The analysis of liability for Florida common law trademark infringement under Count 4 is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act in Count 1. *See PetMed Express*, 336 F. Supp. 2d at 1217-18. Accordingly, Plaintiff has satisfied the elements to establish a claim for Florida common law trademark infringement as alleged in Count 4. *See supra* section III.A.1.

### B. Plaintiff is Entitled to Injunctive Relief and Statutory Damages

As to Count 1, Plaintiff requests injunctive relief and statutory damages against Defendant for trademark counterfeiting and infringement. (ECF No. 12 at 8-11). As to Counts 2, 3, and 4, Plaintiff requests only the equitable and statutory damages awarded pursuant to Count 1. *Id.* at 13.

### 1. *Injunctive Relief as to Count 1*

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of

choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (alteration in original) (citation omitted). Injunctive relief is available even in the default judgment setting, *see, e.g., PetMed Express,* 336 F. Supp. 2d at 1222-23, because a defendant's failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction. *See, e.g., Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates that: (i) it has suffered irreparable injury; (ii) there is no adequate remedy at law; (iii) the balance of hardship favors an equitable remedy; and (iv) the issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, Plaintiff has carried its burden on each of these four factors. Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [plaintiff's] business reputation and decrease its legitimate sales."). Plaintiff's Complaint and the supporting declarations reflect that the goods produced and sold by Defendant are nearly identical to Plaintiff's genuine products, and consumers viewing Defendant's counterfeit goods post-sale would confuse them for Plaintiff's genuine products. *See, e.g.*, (ECF No. 1 ¶ 50) ("Defendant is

using confusingly similar copies of the Pseudo Force Studio Marks for different quality goods, such that consumers are likely to be confused as to whether the Counterfeit Goods are sold by Plaintiff."); *Id.* ¶ 49; (Ruby Decl. ¶ 13) ("Defendant is promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's products in interstate commerce that are counterfeits and confusingly similar infringements of Plaintiff's intellectual property rights . . . through the Website."); (ECF No. 1 ¶ 52 ("Defendant is using a confusingly similar version of the Pseudo Force Studio Marks for different quality goods.").  Plaintiff has no adequate remedy at law if Defendant continues to infringe the Pseudo Force Studio Marks by using them to advertise, promote, sell, and offer to sell counterfeit and infringing goods because Plaintiff cannot control the quality of what appears to be its products in the marketplace.  *See, e.g., Id.* ¶ 50 ("Defendant is using confusingly similar copies of the Pseudo Force Studio Marks for different quality goods, such that consumers are likely to be confused as to whether the Counterfeit Goods are sold by Plaintiff."); *Id.* ¶ 52 ("Defendant is using a confusingly similar version of the Pseudo Force Studio Marks for different quality goods").  Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace.  On the other hand, Defendant faces no hardship if it is prohibited from the continued infringement of Plaintiff's trademarks, to which it have no right.  Finally, the public interest supports the issuance of a permanent injunction against Defendant to prevent consumers from being misled by Defendant's products, and potentially harmed by their inferior quality.  *See Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."); *see also World Wrestling Entm't, Inc. v. Thomas*, No. 12-CV-21018, 2012 WL 12874190, at *8 (S.D. Fla. Apr. 11, 2012) (considering the

potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing the public's interest in an injunction).

Moreover, broad equity powers allow the Court to fashion injunctive relief necessary to stop Defendant's infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case.") (alterations added; citation and quotation marks omitted); *United States v. Bausch & Lomb Optical Co*., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.") (citations omitted)). Accordingly, Plaintiff should be awarded injunctive relief as to Count 1.

  2. *Statutory Damages for Counts 1, 2, 3, and 4*

In Count 1, Plaintiff also seeks damages under 15 U.S.C. § 1117(c) (providing statutory damages for use of counterfeit marks). Pursuant to § 1117(c), a plaintiff may elect an award of statutory damages at any time before final judgment in the sum of not less than $1,000 nor more than $200,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). Additionally, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000 per mark per type of good. 15 U.S.C. § 1117(c)(2).

The Court has wide discretion in setting the amount of statutory damages. *PetMed Express*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). Indeed, an award of statutory damages is an appropriate remedy, even where a plaintiff is unable to establish actual damages caused by a defendant's infringement. *Ford*,

441 F. Supp. 2d at 852 ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *see also PetMed Express*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure").

Moreover, a defendant's intent can be evidence of willfulness, triggering an enhanced statutory award. *Id*. A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. *See Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. *Arista Records,* 298 F. Supp. 2d at 1313 (finding a court may infer willfulness from the defendants' default). Here, the Complaint alleges that Defendant is engaging in illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's federally registered trademarks for the purpose of trading on Plaintiff's goodwill and reputation. (ECF No. 1 ¶ 63); (Ruby Decl. ¶ 15). Defendant has defaulted on Plaintiff's allegations of willfulness.

Plaintiff requests a statutory damage award of $1,000,000 against Defendant. (ECF No. 12 at 12). This Court and other courts in this District have granted similar statutory damages under the Lanham Act.[5] Accordingly, the undersigned recommends that the District Court award statutory damages under the Lanham Act to ensure Defendant does not continue its intentional and

---

[5] *See e.g., Chanel. Inc. v. The Individuals, Business Entities, and Unincorporated Assocs.,* No. 22-CV-60194-JEM (S.D. Fla. Mar. 16, 2023) (ECF Nos. 51, 55) (adopting Magistrate Judge's recommendation to award $100,000 in statutory damages per defendant); *Vineyard Vines v. The Individuals, Business Entities, and Unincorporated Assocs.,* No. 21-CV-61991-KMW (S.D. Fla. Dec. 21, 2021) (ECF No. 42 at 4) (awarding plaintiff $1 million in statutory damages against each defendant for use of counterfeit marks); *Richemont Int'l v. The Individuals, Business Entities, and Unincorporated Assocs.*, No. 19-CV-62897-KMW (S.D. Fla. May 15, 2020) (ECF No. 49 at 4) (same); *Chanel v. Designerreplicachanel.com*, No. 17-CV-62048-KMW, 2018 U.S. Dist. LEXIS 227392, at *4 (S.D. Fla. Aug. 22, 2018) (same).

willful counterfeiting activities.  Lastly, damages for Counts 2, 3, and 4 should be limited to the same equitable and statutory damages awarded under Count 1.  *Id.* at 13.

## IV.    <u>RECOMMENDATION</u>

For the reasons set forth above, the undersigned respectfully recommends that Plaintiff's Motion for Entry of Final Default against Defendant (ECF No. 12) be **GRANTED**.

Within **14 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2025); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida December 17, 2025.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  Chief U.S. District Judge Cecilia M. Altonaga
     U.S. District Judge Jose E. Martinez
     All Counsel of Record